| WILLIAMS, J.
After being stabbed by another inmate, John Poullard (“Poullard”) filed a delictual action against prison authorities for failure to protect him. His case was dismissed pursuant to an exception of prematurity based on Poullard’s alleged failure to exhaust administrative remedies. For the following reasons, we affirm. However, for purposes of the timeliness of Poullard’s request for an administrative remedy, we hold that Poullard’s request was timely and he should be allowed to proceed with the first step of the administrative remedy procedure.
FACTS AND PROCEDURAL HISTORY
In April 2002, John Poullard wrote a letter to the warden of the David Wade Correctional Center (“DWCC”), where *482 Poullard was incarcerated. The letter stated that Poullard’s life had been threatened by another inmate, Haywood Ceasar, asserted that Poullard’s life was in danger and requested the warden to do something about the situation. The letter was referred to Rebecca Moss (“Moss”), a classification officer over the prison’s protection unit, who was the Administrative Remedy Procedure (“ARP”) screening officer. Moss screened the letter, concluded that it was a request for an administrative remedy, but rejected it because it did not specifically state that it was a request for administrative remedy and because it did not have a specific date of the alleged threat. Moss later testified that if Poul-lard had written on the letter that it was a request for administrative remedy, had given a specific date for the alleged incident and had returned the letter, then the letter would have been accepted as an ARP. There is a factual dispute as to whether or not Poullard ever returned the letter.
|?On May 8, 2002, Haywood Ceasar stabbed Poullard, who was then taken to the prison infirmary where he was treated by the nurse on duty. Thereafter, on May 20, 2002, Poullard filed a one-page handwritten document stating at the top of the page that the document was an administrative remedy complaint. Under the caption “Statement of Complaint,” Poullard wrote the following:
Failure To Protect Denial of proper medical treatment. On May 8, 2002 Poullard was stabb [sic ] by another inmate and was never examin [sic ] By a Doctor. He was suppose [sic] to be seen by a Doctor not a nurse alone.
This complaint was accepted as an ARP, and on June 4, 2002, the warden, Venetia Michael, responded to Poullard’s complaint. The response recounted Poullard’s medical treatment from May 8, 2002, when he was first seen in the infirmary after the physical altercation through May 14, 2002, when he was seen for an irregular pulse as a followup to his May 8 visit to the infirmary. The response by the warden concluded with a statement that Poullard was treated properly according to his signs and symptoms.
At the bottom of the warden’s response were instructions to the inmate indicating that if the inmate was not satisfied with the response, he could go to “Step Two” by checking a blank on the response and forwarding the response to the ARP Screening Officer within five days of his receipt of the decision. Underneath the blank where the inmate could check to indicate his dissatisfaction were several lines provided for the inmate to state the reason he was not satisfied. Poullard checked the blank and supplied the following reasons for dissatisfaction:
13Plaintiff file [sic] ARP for failure to protect him and he was stabb [sic ] by another inmate and didn’t see a Doctor.
Poullard also attached a second page to the response further asserting that he had been transferred to DWCC for protection, that he had never signed a waiver of protection form and that he was stabbed by another inmate after having been denied protective status and never having been placed in the protection unit.
On July 12, 2002, Poullard received a response to the second step of his ARP from the Louisiana Department of Public Safety and Corrections headquarters. The response read as follows:
Your request for an Administrative Review of ARP # DWCC-2002-583 has been received. You claim that you had requested protective custody prior to being stabbed by another inmate. You alleged that you never did see a doctor after this altercation. Your allegations have been investigated and considered. *483 Staffs position on this matter has been closely reviewed. There is no documentation in your institutional file that indicates you ever requested protective custody. You were housed in a working cellblock when another inmate attacked. Your medical records indicate that you were seen in the South Infirmary after this incident. The nurse on duty is qualified to treat and administer first aid as is necessary. There was no need for a physician to evaluate you at that time. Therefore, the first step response has been determined to be clear and concise and has adequately addressed your issues.
As such, your request for relief is denied.
On January 22, 2003, Poullard filed suit in the Second Judicial District Court, Parish of Claiborne against Warden Michael, Assistant Warden Angie Huff and ARP Screening Officer Rebecca Moss. Poullard asserted that in April 2002, he had complained to security, requested protection and subsequently wrote the letter to the warden about the matter. He noted that a copy of his letter was returned to him with a notation that a 14date for the incident was needed and the letter was a request for an administrative remedy. Poullard further asserted that he had also written to Assistant Warden Angie Huff, stating that his life was in danger and a sergeant had threatened “to have him hurt in the month of April 2002.” Poullard alleged that after the warden and security refused to take any action to help him, he made a “homemade shield” and wore it under his clothing each day.
The petition then alleged that on May 8, 2002, Poullard was attacked and stabbed by Haywood Ceasar with a nine-inch heavy steel knife that struck Poullard “in the center of his back” and that when Poullard turned around he was stabbed again and received blows to his ribs, head, face and body. Poullard next recounted the filing and denial of his ARP, and asserted that the Department of Corrections never sent anyone to investigate or to see him.
Poullard’s petition did not assert any claims with regard to his medical treatment, but instead asserted that the defendants had breached a duty of care to protect him from harm and “were negligent and intentionally wrong” in failing to take any action upon his complaint of a threat of harm to him by the inmate who later attacked and stabbed him. Poullard also asserted that the defendants had violated his Fourteenth and Eighth Amendment rights.
In April 2003, the defendants filed a dilatory exception of prematurity for failure to exhaust administrative remedies. The exception noted that Poullard had attached the second-step response to his petition as an exhibit Land he had alleged that he pursued his administrative remedy prior to filing the lawsuit. However, the defendants asserted that his claim of failure to protect was never properly filed as an administrative remedy proceeding because his May 20, 2002 ARP simply alleged that he was stabbed by another inmate and was not examined by a doctor.
The memorandum in support of the exception argued that the April 8, 2002 letter to the warden did not institute an administrative remedy proceeding, but was returned to Poullard who took no further action to pursue an administrative remedy until after the altercation with Haywood Ceasar in May 2002.
At the hearing on the exception, Rebecca Moss testified, as previously noted, the April 2002 letter was not accepted as a proper request for an ARP, the letter was returned to Poullard, and Poullard did not take further action on it. Moss also explained the two-step procedure of an ARP *484 through which the initial complaint, if accepted after screening, goes to the unit head for review and is answered within 40 days. She explained that if the inmate is not happy with the response, he can proceed to the second step in which he requests that his complaint be reviewed by headquarters in Baton Rouge. With respect to the ARP received from Poullard, she stated that she wrote the notation “100 Scriber WCC-02-583” on the document to indicate that it fell into the “medical section.” She then explained:
That’s what his ARP is mainly about is medical treatment. It was sent to Debbie Scriber for a response, and then that’s just the Wade ARP number down at the bottom.
pin response to a question from her attorney as to whether the document requested protection from abuse or threats of bodily injury by another inmate, she answered in the negative. She also answered in the negative when asked whether the document mentioned Haywood Cea-sar or any other inmate or any threat of bodily harm by an inmate. She noted that since he has been incarcerated at DWCC, Poullard had filed a total of 28 ARPs. Based on this number, she indicated her belief that Poullard knew how to use and follow the ARP procedures.
On cross-examination, Poullard asked Moss if she was saying that his ARP stated failure to protect and denial of medical treatment. Moss responded: “It just mainly says the failure to deny [sic ] medical treatment.” The following exchange then occurred between Poullard and Moss.
Q: You just read to the judge failure to protect, huh?
A: Failure to protect, denial of medical treatment.
Q: Yeah, that’s two claims in one: Failure to protect and denial of medical treatment. Let me ask you another question.
A: Okay.
Poullard asked Moss whether it was true that at the bottom of his ARP he complained that the first-step response sidestepped his failure to protect claim and notified Baton Rouge that the failure to protect claim was not answered in the first-step response. Moss replied:
I don’t have that because I don’t have access — I don’t get that. I don’t open your envelope and look at that.
Poullard then had Moss read his written reasons for seeking the second-step |7response where he notified headquarters that the first-step response did not address his failure to protect claim. On this point, Moss responded:
Because your first — your ARP in my position was mainly on failure to — failure to protect, denial of proper medical treatment, and then you go on to say that you had been stabbed. You don’t say anything about needing further protection.
At the conclusion of the hearing, defendants’ counsel argued that Poullard had five weeks from the time that Moss returned his April 2002 letter to him in which to make the changes that would have allowed it to have been treated as an ARP, but Poullard did not do anything until after he was stabbed, and:
[H]e knew that he had to have an ARP that covered medical protection and protection from Mr. Ceasar if he was going to get over the judicial review in this court.
Counsel argued that it was incredible that Poullard went into detail in the April 2002 letter, but then did not talk about failure to protect in this May 2002 ARP. Counsel suggested this was because Poullard had raised the medical claim timely and was *485 trying to “bootstrap” back to the prior incident so that his lawsuit would not be premature. Counsel argued that the words “failure to protect” did not give any information and did not adequately give notice of a claim for failure to protect against an attack by Haywood Ceasar.
Poullard then argued that his first-step complaint stated: “Failure to protect, denial of medical treatment, being stabbed by another inmate, seeing a nurse and not a doctor.” Poullard stated that he had no control over the prison’s investigative procedures, and that no one came to talk to him or to investigate anything. He argued that instead, the prison chose to treat his IsARP as only a complaint about medical treatment, and when he went to the second step of the ARP, headquarters clearly recognized and investigated his ARP for both the failure to protect and the denial of medical treatment, which headquarters stated it investigated. Thus, Poullard argued that he had exhausted his administrative remedies. He also acknowledged that he had abandoned his medical claim and was proceeding to court only on the failure to protect claim because he concluded he had received proper medical treatment.
After arguments on the exception, the court stated that it was impressed with Poullard’s intelligence, and thought that Poullard knew the administrative system very well. The court concluded that given the fact the April 2002 letter was sent back to Poullard, and that he took no other action on the letter, the court would grant the exception of prematurity and dismiss the case. Poullard responded that the lawsuit was not based on the letter, to which the court then responded that Poul-lard could appeal if he wished.
DISCUSSION
The administrative remedy procedure provided in LAC 22:1.325 constitutes the administrative remedies available to an offender for the purpose of preserving any cause of action he or she may claim to have against the State of Louisiana, the Department of Public Safety and Corrections, or its employees. LSA-R.S. 15:1172(A). If an offender fails to timely initiate or procure his administrative remedies within the deadlines established in LSA-R.S. 15:1172(B), his claim is abandoned, and any subsequent suit asserting such a claim must be dismissed with prejudice. LSA-R.S. 15:1172(C). Under the provisions of LSA-R.S. 15:1172(B)(1), an offender shall initiate his administrative remedies for a delictual action for injury or damages within 90 days from the date the injury or damage is ^sustained.
In the instant case, all of the parties involved, including Poullard, agree that his April 2002 letter to the warden was not an ARP. On the other hand, the document he filed in May 2002 unquestionably was an ARP. Furthermore, we note that Poullard’s delictual cause of action for the injuries allegedly sustained in the stabbing incident did not arise until the stabbing incident occurred. Although a prison can breach a duty to an inmate to protect him from a threat of harm by another inmate, until such harm occurs, there can neither be the causation nor the damages necessary for a cause of action. Accordingly, although Poullard’s April 2002 letter to the warden may be of significance on issues of breach of duty or comparative fault, our focus concerning the exhaustion of administrative remedies must be on Poullard’s May 2002 filing which he clearly identified as an ARP.
We first observe that the May 2002 filing is timely, having been filed less than two weeks after the stabbing incident. Next, we observe that while the document’s statement of complaint is brief and *486 furnishes few facts, it nevertheless plainly states that Poullard is complaining of failure to protect and denial of proper medical treatment. The document also states that Poullard was stabbed by another inmate on May 8, 2002, and that he was never examined by a doctor, but only by a nurse. The logical conclusion from this brief recitation is that Poullard was complaining of the prison’s failure to protect him from being stabbed, and that he was complaining of |inthe denial of proper medical treatment because he was seen only by a nurse and not by a doctor. Accordingly, we conclude that Poullard’s ARP, timely filed and accepted as an ARP by the screening officer, preserved Poullard’s rights to administrative review of both his failure to provide protection complaint and his medical complaint.
In Muntz v. Lensing, 96-0230 (La.3/8/96), 668 So.2d 1147, an inmate sought judicial review of the Department of Public Safety and Corrections’ alleged failure to provide him with needed medical treatment. At the district court level, the clerk of court had returned the application for judicial review because the application was incomplete. The initial application had been filed within 30 days of the notice of the denial of administrative relief, and, thus, was timely. Later, the refiled application for judicial review was met with an exception of prescription, and the district court dismissed the application. Although the appellate court affirmed the dismissal, the Louisiana Supreme Court held that the district court erred in allowing the clerk of court to return the incomplete application rather than filing the application and requiring supplementation within a specified reasonable period of time. Accordingly, the judgments of the lower courts were set aside, the exception of prescription was overruled and the case was remanded to the district court for consideration of the merits.
By analogy to Muntz, Poullard’s timely filing of his ARP in which he mentions both a failure to protect claim and a medical claim should be sufficient to preserve his right to administrative review, and judicial review, if necessary. Any failure to detail his grievance in the letter to the unit head could be grounds for return of the letter for clarification, but should not be Ingrounds for concluding that Poul-lard failed to adequately initiate an ARP with respect to his claim of failure to protect. Bolstering this conclusion is the statement in LAC 22:I.325(F)(3)(b):
If a request is unclear or the volume of attached material is too great, it may be rejected and returned to the offender with a request for clarity or summarization on one additional page.
If an offender refuses to cooperate with an inquiry into his allegation, his request for an administrative remedy may be denied by noting such lack of cooperation on the appropriate step response form and returning it to the offender. LAC 22:I.325(F)(3)(c).
Having concluded that Poullard preserved his right to administrative review, and to subsequent judicial review if necessary, we next must determine whether to allow his lawsuit to go forward or to return the matter to DWCC for further administrative proceedings. Although one arguably could conclude that the investigation by headquarters pursuant to the second step of the ARP was sufficient to cure the lack of investigation pursuant to the first step, and that to remand the matter for further administrative proceedings would be a waste of time, we reach the opposite conclusion.
First, we note that headquarters’ response indicated there was no documentation in Poullard’s institutional file indicating that he had ever requested protective *487 custody. However, Poullard had sent the April 2002 letter in which he referred to a request for “protection papers” and in which he requested to be moved in light of the other inmate’s threat to kill him. Headquarters’ response perhaps indicates that when Poullard’s letter was returned to him, the prison neither kept a copy nor made any notation of the alleged death threat against him. However, even if this is the case, 1 ^headquarters should have been able to take this fact into account in evaluating the adequacy of the actions of the prison officials.
Furthermore, we observe that the medical information in the record indicates that after the stabbing Poullard was treated for a “superficial puncture type wound” and two “superficial scratch like wounds,” all wounds with minute bleeding. The nurse concluded there was no need for a physician to evaluate Poullard at that time. Furthermore, later medical complaints from Poullard were promptly treated, and, indeed, Poullard dropped his medical claims before filing suit. Because the very purpose of the administrative review procedure with respect to delictual actions is to possibly avoid the necessity of a lawsuit by bringing about an amicable resolution to a complaint, and because the medical record suggests that Poullard’s injuries were not significant, we cannot say that sending the matter back to the prison for a more thorough exercise of the administrative review procedure could not be beneficial in this case.
Finally, we note that Poullard will suffer no prejudice from thorough compliance by all parties with the administrative review procedures. Ultimately, if no satisfactory resolution is achieved, Poullard still will have the opportunity to file a tort action in district court.
For the foregoing reasons, we conclude that the administrative review procedures established by law were not complied with in the instant case. It is not necessary to assign fault for this non-compliance. Instead, it is enough to note that Poullard’s actions herein were sufficient to preserve his 113right to full administrative review and that such review may yet be of benefit herein.
CONCLUSION
For the reasons set forth above, the judgment sustaining the exception of prematurity is hereby affirmed, with the proviso that the appellant, John Poullard, still is entitled to an ARP on his claim of failure to protect, beginning with step one of the process. Accordingly, this lawsuit is hereby dismissed without prejudice. The ARP screening officer at DWCC is hereby ordered to consider the letter Poullard submitted in April 2002, in combination with the document he submitted in May 2002, as Poullard’s first-step request for an ARP.
AFFIRMED WITH INSTRUCTIONS.